# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | I.D. No.: 1804003703 |
| | ) | |
| | ) | |
| VINCENT R. LAW, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

Submitted: September 11, 2018
Decided: October 11, 2018

*Upon Consideration of Defendant's Motion to Suppress Evidence, and Motion to
Supplement the Motion to Suppress Evidence,*
**DENIED.**

William L. Raisis, Esquire, Deputy Attorney General, Department of Justice,
Wilmington, Delaware. *Attorney for the State.*

Joe Hurley, Esquire, Wilmington, Delaware. *Attorney for the Defendant.*

**MEDINILLA, J.**

**AND NOW TO WIT**, this 11th day of October, 2018, upon consideration of the Defendant's Motion to Suppress and his Motion to Supplement Motion to Suppress, as well as the record in this case, it appears to the Court that:

1.  On April 7, 2018, Defendant Vincent R. Law ("Defendant") was arrested and stands charged with Felony Driving a Vehicle While Under the Influence ("DUI"), Vehicular Assault Second Degree, Reckless Driving, Criminal Mischief, No Proof of Insurance, Driving Without a License, and Failure to Yield Right of Way. Defendant argues that under a four-corners analysis, the Search Warrant Affidavit ("Affidavit") fails to establish probable cause to obtain the search warrant that was issued in this case for Defendant's blood withdrawal.[1]

2.  Defendant argues suppression of the evidence is warranted for what the Court considers arguments that fall into three categories. First, Defendant claims the Affidavit does not set forth the officer's knowledge or training to administer pre-screening arrests tests, fails to identify the tests, and does not adequately state the reasons why Defendant was unable to perform said tests.[2] Second, Defendant suggests that Defendant's admission to having consumed alcohol is of little value where the admission fails to state the quantity or timeframe of the consumption, and

---

[1] *See* Def.'s Am. Mot. ¶ 4.

[2] *See id.* ¶¶ 4(b),4(g).

2

further challenges the officer's ability to characterize the strength or the "odor" of alcohol.[3] Finally, although there is no dispute that Defendant was involved in a motor vehicle accident, he argues that the Affidavit fails to establish that it was Defendant's impairment that caused the accident, and thus was not properly before the Magistrate for a probable cause determination. On this causation issue, he claims not only that the Magistrate had an insufficient basis to find probable cause, he also seeks consideration of a supplemental photograph of the Defendant's vehicle damage to highlight the Affidavit's inaccuracies, and argues that a *Franks* hearing is required; in the alternative, a correction to the Affidavit.[4]

3.  Corporal K. Diaz ("Diaz"), the affiant from the Delaware State Police ("DSP"), presented in the Affidavit that he is a sworn member of the DSP and currently assigned to Troop 2. He stated further that he obtained his bachelor's degree in criminal justice at Holy Family University and is a graduate of the Delaware State Police Academy.

4.  The Affidavit provides that on April 7, 2018 at approximately 11:27 a.m., Trooper Diaz responded to the area of Northbound on Market Street just North

---

[3] Def.'s Am. Mot. ¶ 4(f) ("The sum and substance of the remaining content indicated an admission of consuming alcohol, without there being any indication of quantity consumed or timing of consumption as well as an odor of what was described as a 'strong odor of alcohol'. Of course, alcohol does not have an odor.").

[4] *See id.* ¶ 4(a); *see generally* Mot. to Supplement Mot. to Suppress [hereinafter "Mot. to Suppl."].

of Rogers Road in Wilmington, Delaware related to a two-vehicle crash,[5] involving a 2001 BMW with Maryland registration and a Ford van with Delaware registration.[6] Major damage was caused to both vehicles.[7] The BMW was registered to Vincent R. Law ("Defendant").[8] Diaz responded to the Christiana Health Care's Emergency Room where Defendant was being treated for injuries.[9] Diaz made contact with Defendant and read him his *Miranda* rights. Defendant waived and spoke to the officer.[10]

5. The Affidavit continues to describe that Defendant told Trooper Diaz that he was driving from a casino in Baltimore and traveling to Philadelphia when he was involved in the accident in Wilmington.[11] Defendant admitted that while in the casino, he was drinking liquor, specifically "Jameson."[12] Diaz stated he "could smell a strong odor of alcohol coming from Defendant while he spoke."[13] Diaz

---

[5] Aff. ¶ 1.

[6] *Id.* ¶ 2.

[7] *Id.*

[8] *Id.* ¶ 3.

[9] *Id.* ¶ 4.

[10] Aff. ¶ 5.

[11] *Id.* ¶¶ 6-7.

[12] *Id.* ¶ 7.

[13] *Id.* ¶ 6.

stated in the Affidavit also that "[s]everal pre-screening arrests tests were administered to Law in which he was unable to complete properly."[14] The Diaz Affidavit states "there is probable cause that the above-named Defendant is presently under the influence of alcohol and/or drugs and requests a search warrant to draw…defendant's blood…."[15] The Magistrate issued the search warrant.

6.      Defendant moves to suppress the blood test results and filed this Motion on June 29, 2018. Defendant subsequently filed an Amended Motion to Suppress on July 20, 2018.  The State filed a Response to Defendant's Motion to Suppress on July 20, 2018.  Defendant filed a Reply to State's Response on August 9, 2018.  A Suppression Hearing ("Hearing") was held on September 7, 2018.  Defendant subsequently filed a Motion to Supplement Motion to Suppress Evidence on September 11, 2018.  The State filed a Reply to Defendant's Motion to Supplement Motion to Suppress Evidence on September 11, 2018.

### *Standard of Review*

7.      When the Court is presented with a motion to suppress challenging the validity of a search warrant, "the defendant bears the burden of establishing that the challenged search or seizure was unlawful."[16]  Here, a magistrate's probable cause

---

[14] Aff. ¶ 7.

[15] Aff.

[16] *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005), *aff'd*, 903 A.2d 288 [hereinafter "*Sisson I*"].

determination should be reviewed with great deference and should not "take the form of a de novo review."[17] A magistrate's probable cause determination should be considered "as a whole in a practical, commonsense manner, and not on the basis of a hyper-technical analysis of its separate allegations."[18] This Court's duty is "simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed."[19] The totality of the circumstances test is used to determine "whether probable cause to obtain a search warrant exists[.]"[20]

### *Probable Cause Established under the Four-Corners Analysis*

8. When determining if there is probable cause to issue a search warrant, a "magistrate may only consider the information considered within the four-corners of the affidavit."[21] An "affidavit in support of a search warrant must, within the four-corners of the affidavit, set forth facts adequate for a judicial officer to form a reasonable belief that an offense has been committed and the property to be seized

---

[17] *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).

[18] *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006) (citing *Smith v. State*, 887 A.2d 470, 473 (Del. 2005)) [hereinafter "*Sisson II*"].

[19] *Id.* (citation omitted).

[20] *Id.* (citing *Fink v. State*, 817 A.2d 781, 787 (Del. 2003); *Gardner v. State*, 567 A.2d 404 (Del. 1989)).

[21] *Rybicki v. State*, 119 A.3d 663, 668 (Del. 2015) (citing *LeGrande v. State*, 947 A.2d 1103, 1107 (Del. 2008)).

will be found in a particular place."[22] The "magistrate may draw reasonable inferences from the affidavit's factual allegations."[23] Although Defendant challenges various portions of the Affidavit to discount facts in his favor, the Supreme Court has previously held that "[t]he possibility that there may be a hypothetically innocent explanation for each of several facts revealed during the course of an investigation does not preclude a determination that probable cause exists...."[24] The Court addresses Defendant's challenges in order.

9. First, this Court disagrees that the Affidavit fails to provide qualifications of the affiant "other than the qualifications of an ordinary layperson...."[25] He is not a layperson. Trooper Diaz sets out that he has an undergraduate degree in criminal justice and is a graduate of the DSP Academy, currently assigned as a law enforcement officer to Troop 2. Thus, it was not unreasonable for the Magistrate to consider that Trooper Diaz carried the requisite experience to conduct the proper tests to determine Defendant's impairment or intoxication. His qualifications were not the problem. More problematic is the

---

[22] *Sisson II*, 903 A.2d at 296 (citation omitted).

[23] *Lambert v. State*, 110 A.3d 1253, 1255 (Del. 2015) (quoting *Rivera v. State*, 7 A.3d 961, 967 (Del. 2010)).

[24] *Id.* at 1256 (quoting *State v. Maxwell*, 924 A.2d 926, 930 (Del. 1993)).

[25] *See* Def.'s Am. Mot. ¶ 4(b).

skeletal language in the Affidavit that states "several pre-screening arrest tests were administered to Law in which he was unable to complete properly."[26]

10.    The Affidavit does not provide details about what "pre-screening arrest tests" were administered. Also unclear is what is meant by the representation that Defendant "was unable to perform" these tests. Defendant was in the emergency room when Trooper Diaz presumably administered these tests. It is unknown whether the inability to perform the testing was due to the medical treatment being rendered or the result of alcohol/drug impairment. No test is mentioned by name, except to say they were administered. For example, there is no indication whether the testing included the Horizontal Gaze Nystagmus ("HGN"), the Walk-and-Turn, or the One-Leg Stand test.

11.    Also, no reference is made as to whether National Highway Traffic Safety Administration ("NHTSA") standards were followed when the tests were given. Nothing is said regarding the officer's assessment of any clues that would indicate potential impairment, or that Defendant exhibited any signs related to intoxication. Although the Affidavit omits whether Diaz had NHTSA training to conduct the tests in this case, his NHTSA training and experience may have been more obvious in the Affidavit had he set out the specifics of his findings and the results of the tests. This was not done. Given the lack of information regarding the

---

[26] Aff. ¶ 7.

8

testing and what was meant by Defendant's inability to perform them, the "magistrate did not have a proper basis upon which to judge the defendant's results."[27] Therefore, this Court agrees with Defendant that the affiant's generic statement related to Defendant's inability to perform unknown tests was an insufficient factor as presented for a proper probable cause analysis.

12. Nevertheless, even excluding the statements regarding the pre-screening tests, under the totality of the circumstances, and giving deference to the Magistrate, there is a substantial basis for concluding that probable cause existed from the remaining facts in the Affidavit to issue a valid search warrant. Thus, Defendant's two remaining arguments are without merit.

13. Defendant claims that the Affidavit does not provide information about the accident that "would attribute fault for the collision on the part of the defendant."[28] This argument was previously advanced unsuccessfully in *Lambert v. State* where Defendant argued that, within the four corners of the Affidavit, there was nothing to suggest that defendant was at fault for causing the accident.[29] The

---

[27] *State v. Cajthaml*, 2013 WL 12201338, at *2 (Del. Com. Pl. Dec. 16, 2013). The affidavit in *Cajthaml* set forth that the officer had the defendant "conduct field sobriety tests which she subsequently failed" and defendant did not correctly perform an intoxilyzer test. *Id.* at *1. The Court held that this explanation of defendant's failure to perform the field sobriety tests "does not provide a sufficient basis for the issuing magistrate to determine the reliability of the tests." *Id.* at *2.

[28] Def.'s Am. Mot. ¶ 4(a).

[29] *Lambert*, 110 A.3d at 1256.

Supreme Court held that in order to determine if there was probable cause to believe that the defendant was under the influence, "the magistrate need only have found probable cause that 'because of alcohol or drugs or a combination of both, [Lambert was] less able than [he] would ordinarily have been, either mentally or physically, to exercise clear judgment, sufficient physical control, or due care in the driving of [his] vehicle.'"[30] No determination that the defendant was at fault for the accident was required in *Lambert*.[31]

14. This Court finds that determinations of negligence or liability in the civil context need not be established by law enforcement as factors for the Magistrate's consideration to determine whether probable cause exists to proceed against an individual for criminal conduct. Whether Defendant was at fault does not change the fact that Defendant was involved in—and unable to avoid—an accident. That there was an accident is merely but one factor that, albeit standing alone, may be insufficient for a finding of probable cause.

15. The Delaware Supreme Court has further explained that a "traffic violation combined with a strong odor of alcohol, standing alone, do not constitute probable cause to arrest the driver for a DUI offense."[32] Although this may not

---

[30] *Id.* (quoting 21 *Del. C.* § 4177(a); 21 *Del. C.* § 4177(c)(11)).

[31] *See id.*

[32] *Lefebvre v. State*, 19 A.3d 287, 293 (Del. 2011) (citing *Esham v. Voshell*, 1987 WL 8277 (Del. Super. Mar. 2, 1987)); *see Rybicki*, 119 A.3d at 671 (citation omitted).

constitute probable cause, a finding of probable cause may be established when additional information is provided in the search warrant affidavit.[33] Here, there was more. These additional factors included an accident that resulted in major damage to both vehicles, the strong odor of alcohol coming from Defendant while Trooper Diaz spoke with him, *and Defendant's admission* that he was indeed driving from a casino in Baltimore to Philadelphia where he had been drinking alcohol, namely Jameson.

16. That Defendant's admission to drinking alcohol did not specify the number of drinks he consumed, or when he had consumed them, is not fatal to the finding of probable cause, especially where the admission is coupled with the officer's ability to detect a strong odor of alcohol. It was not unreasonable for the officer to consider the strong odor detected in his probable cause calculus. Although Defendant asserts that "alcohol does not have an odor,"[34] magistrates have considered the odor of alcohol as a factor in its probable cause determination.[35]

---

[33] *See State v. Dopirak*, 2017 WL 3129234, at *2 (Del. Super. July 24, 2017) (indicating factors sufficient for probable clause include egregious erratic driving, a strong odor of alcohol, and defendant's refusal to submit to intoxilyzer test or blood draw); *Rybicki*, 119 A.3d at 671 (detailing defendant's one vehicle accident, defendant's disorientation, the smell of alcohol, and defendant's refusal to submit to field sobriety tests, preliminary breath test, and intoxilyzer test as sufficient to establish probable cause); *Lambert*, 110 A.3d at 1256-57 (finding vehicle collision, watery, bloodshot eyes, and detection of odor of alcohol provided magistrate sufficient information to support finding of probable cause).

[34] Def.'s Am. Mot. ¶ 4(f).

[35] *See Dopirak*, 2017 WL 3129234, at *2.

Accordingly, reasonable inferences could have been made regarding the time of when he was drinking when he left the casino in Baltimore until he was involved in the accident in Wilmington.

17. This Court finds the Magistrate had a substantial basis for concluding that probable cause existed. The Affidavit set forth facts adequate for the Magistrate to form a reasonable belief that the offense of DUI had been committed. Where BAC evidence deteriorates over time, the Magistrate made reasonable inferences that Diaz had probable cause to believe Defendant had committed the offense of DUI and that evidence of his intoxication could be found in Defendant's blood.[36]

18. Lastly, Defense counsel requests a *Franks* hearing, or alternatively, that the Court reconstruct the Affidavit and make a ruling in his favor by comparing the language used in the Affidavit and the photographs of the damage to Defendant's vehicle made available to defense counsel after the Hearing.[37] Defense counsel asserts that the photographs show that the representation made by the investigating officer in the Affidavit was "suspect and inaccurate."[38] Specifically, photographs of

---

[36] *See Rybicki*, 119 A.3d at 669-70 (emphasizing statement in affidavit that defendant was *presently* under the influence of drugs or alcohol and explaining that blood alcohol content evidence is "constantly deteriorating and diminishing with time as the body naturally filters alcohol out of the system").

[37] *See generally* Mot. to Suppl.

[38] Mot. to Suppl. ¶ 5.

Defendant's vehicle taken the day after the accident suggest it was Defendant who was hit, not the other way around.

19. A *Franks* hearing may be held at a defendant's request if "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the false statement is necessary to a finding of probable cause[.]"[39] In order to mandate a *Franks* evidentiary hearing, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine."[40]

20. Defendant fails to make the required "substantial preliminary showing" that the officer knowingly and intentionally or recklessly with disregard relied on false statements to establish probable cause to obtain a search warrant for Defendant's blood sample.[41] Defendant's allegation was merely that the Officer's representation in the Affidavit was "suspect and inaccurate." This does not establish the requirement of a knowing and intentional falsehood or reckless disregard for the

---

[39] *Blount v. State*, 511 A.2d 1030, 1033 (Del. 1986) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

[40] *Franks*, 438 U.S. at 171.

[41] The Court does not analyze the second requirement that requires that such allegations of deliberate falsehood or reckless disregard for the truth "must be accompanied by an offer of proof," where here, none was provided except from defense counsel.

truth as required under *Franks*.[42] Furthermore, even if it had been determined to be a false statement, for the reasons previously stated, clarification regarding which vehicle was struck first is not required for a finding of probable cause. Thus, Defendant's request to "reconstruct the Affidavit" is not necessary.

21. For these reasons, the evidence seized from Defendant will not be suppressed. Defendant's Motion to Suppress is **DENIED**. The Motion to Supplement Motion to Suppress is also **DENIED**.

**IT IS SO ORDERED.**

Vivian L. Medinilla
Judge

---

[42] *See Jensen v. State*, 482 A.2d 105, 113-14 (citing *Franks*, 438 U.S. at 171-72).